WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Crystal Springs Capital Incorporated,<br><br>Plaintiff,<br><br>v.<br><br>Franklin Capital Funding LLC, et al.,<br><br>Defendants. | No. CV-25-01586-PHX-GMS<br><br>**ORDER** |

Pending before the Court are Defendants Franklin Capital Funding, LLC ("Franklin Funding") and Frankling Capital Group, LLC's ("Franklin Group") (collectively, "Defendants") Motion for Judgment on the Pleadings (Doc. 28) and Plaintiff Crystal Springs Capital Inc.'s Motion to Amend the First Amended Complaint (Doc. 31). For the reasons discussed below, Defendants' motion is granted and Plaintiff's motion is granted in part and denied in part.

## BACKGROUND

Plaintiff and Defendants are creditors of non-party Arizona business entities (the "Debtors"). (Doc. 13 at 4-5). Both Plaintiff and Defendants have certain contractual rights under their respective agreements with the Debtors and have perfected security interests in the Debtors' assets. (*Id.*). The validity and priority of those rights and interests are at issue here.

## I.    Underlying Transactions

A series of transactions inform the parties' rights and interests.

Green Transactions.    First, beginning in 2016, Green Capital Funding LLC[1] ("Green") "acquired a percentage of" the Debtors' "receivables" by "enter[ing] into a series of merchant cash advance agreements." (*Id.* at 4).  Green subsequently filed two financing statements—one in 2016 and one in 2018—with the Arizona Secretary of State, perfecting its "security interests in all of [the] Debtors' present and future assets" (the "Green Financing Statements").  (*Id.*).

Crystal Transaction.    Second, in October 2020, Plaintiff agreed to purchase receivables from the Debtors and filed a financing statement with the Arizona Secretary of State, perfecting its "security interest in certain assets of Debtors." (*Id.* at 4-5).

Franklin Transaction.    Third, in May 2021, Franklin Group agreed to provide funding to the Debtors and filed a financing statement with the Arizona Secretary of State, perfecting its "security interest in certain assets" of one of the Debtors. (*Id.* at 5).

Green-Franklin Assignment.  Fourth, in June 2021, Franklin Group purchased all of Green's "rights, titles, and interests" under the Green Transactions for $250,000.  (*Id.*). Franklin Group then filed an amendment with the Arizona Secretary of State to designate that the Green Financing Statements were assigned to Franklin Group. (*Id.*).  On July 2021, Franklin Group assigned the Green Financing Statements to Franklin Funding. (*Id.*).

## II.    Breach & New York State Court Litigation

After the May 2021 Franklin Transaction, the Debtors breached their Crystal Transaction agreement with Plaintiff.  (*Id.*).

Over two years later, "[o]n March 4, 2024, the Attorney General of the State of New York filed suit against" various entities, including Green, for "engag[ing] in a fraudulent, predatory lending scheme." (*Id.* at 6).  Throughout the course of that litigation, Green "was required to, but did not disclose, the [Green-Franklin] Assignment to the" trial court.  (*Id.*

---

[1] Green is a defendant in this action, against whom the Clerk of Court has entered default (Doc. 38).

at 7). As such, Defendants were not a party to the New York suit. (Doc. 28 at 3-4; *see* Doc. 31 at 2).

On January 16, 2025, the state trial court entered a Consent Order and Judgment (the "Consent Order") against Green. (Doc. 13 at 6, 13-30). Under the terms of the Consent Order, "all obligations owed or purportedly owed" to Green or to Green's "assigns, in connection with the" predatory lending schemes, "including but not limited to unpaid balances of any kind, fees, attorneys' fees, settlement amounts, and unsatisfied judgments" were "irrevocably cancelled." (*Id.* at 6). Further, Green was ordered to "cease any and all attempts to recover any" such balances, and to "ensure that no . . . assign[] attempts to recover any [such balances] or receives any money or other consideration in connection with" such balances. (Doc. 13 at 6-7).

Following the Consent Order, Plaintiff "took steps to enforce its rights" under the Crystal Transaction by sending "a restraining notice to one of [the] Debtors' customers demanding that any funds owed to [the] Debtors be paid directly to" Plaintiff. (*Id.* at 7). Defendants contacted the customer, claimed a senior interest in the Debtors' assets, and instructed the customer not to pay Plaintiff. (*Id.* at 8). Defendants then contacted Plaintiff to assert the senior interest pursuant to the Green-Franklin Assignment and to demand that Plaintiff "cease and desist" from any further "attempt to exercise dominion or control over" the Debtors' assets. (*Id.* at 8, 42-43).

Plaintiff now seeks to enforce the Consent Order against Defendants to void Defendants' senior security interest, asserting that Defendants are improperly seeking "to enforce the contractual rights and security interests in question" and "using those contractual rights and security interests to prevent [Plaintiff] from collecting a valid debt." (*Id.* at 2, 8-10). Specifically, in its Corrected First Amended Complaint, Plaintiff seeks (1) a declaratory judgment that its "rights and interests in [the] Debtor's assets are superior to, and have priority over, any "rights or interests of" Defendants, which "are void and unenforceable"; and (2) an injunction preventing Defendants from "asserting or

- 3 -

exercising" their "rights and interests" and requiring Defendants to "terminate" the Green Financing Statements. (*Id.* at 8-10).

## DISCUSSION

Defendant moves for judgment on the pleadings, arguing that Plaintiff's attempt to enforce the Consent Decree is an impermissible use of offensive collateral estoppel, such that Plaintiff's suit fails as a matter of law. (Doc. 28 at 1, 4-7).

### III.    Legal Standards

#### A.    Judgment on the Pleadings

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." To survive a Rule 12(c) motion, a claimant must allege sufficient facts to state a claim to relief that is plausible on its face. *See* Fed. R. Civ. P. 8(a); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The standard governing Rule 12(c) is "functionally identical" to that governing a rule 12(b)(6) motion. *United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011). When analyzing a Rule 12(c) motion, the court must accept the nonmovant's allegations as true, *see Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989), and construe factual allegations in a complaint in the light most favorable to the nonmovant. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). Thus, "[j]udgment on the pleadings under Rule 12(c) is proper when the moving party establishes on the face of the pleadings that there is no material issue of fact and that the moving party is entitled to judgment as a matter of law." *Jensen Fam. Farms, Inc. v. Monterey Bay Unified Air Pollution Control Dist.*, 644 F.3d 934, 937 n.1 (9th Cir. 2011).

Even where judgment on the pleadings is appropriate, leave to amend should be given "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). A "district court's discretion to deny leave to amend is particularly broad where [the] plaintiff has previously amended the complaint." *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989). Indeed, "whether [a] plaintiff has previously amended his complaint" is one of "[f]ive factors . . . frequently used to assess the propriety of a motion for leave to amend."

- 4 -

*Allen v. City of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (citing *Ascon Props.*, 866 F.2d at 1160). The other four factors are: "(1) bad faith, (2) undue delay, (3) prejudice to the opposing party, [and] (4) futility of amendment," but the Court need not apply all five factors. *Id.* (declining to apply all five factors because futility and the chance to previously amend "plainly reveal[ed]" that plaintiff's claim should be dismissed with prejudice). The Ninth Circuit favors amendment and directs the district courts to apply these standards "with extreme liberality." *DCD Programs Ltd. v. Leighton*, 833 F.2d 183, 185 (9th Cir. 1987). The party opposing amendment bears the burden of establishing that the motion to amend should be denied. *Id.* at 186-87.

### 1.    Collateral Estoppel

"Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Allen v. McCurry*, 449 U.S. 90, 93 (1980) (citing *Montana v. United States*, 440 U.S. 147, 153 (1979)). "[C]ollateral estoppel relieve[s] parties of the cost and vexation of multiple lawsuits, conserve[s] judicial resources, and, by preventing inconsistent decisions, encourage[s] reliance on adjudication." *Id.* When state court decisions are involved, collateral estoppel also "promote[s] comity between state and federal courts." *Id.* at 95. Thus, "[i]n determining the collateral estoppel effect of a state court judgment, federal courts must, as a matter of full faith and credit, apply that state's law of collateral estoppel." *In re Bugna*, 33 F.3d 1054, 1057 (9th Cir. 1994).

### B.    Analysis

Plaintiff here concedes that the Consent Order may not be enforceable against Defendants. (Doc. 31 at 2). And indeed, Defendants cannot be bound by the Consent Order.

Under New York law, "a person [generally] may not be precluded from litigating issues resolved in an action in which that person was not a party." *Gramatan Home Invs. Corp. v. Lopez*, 386 N.E.2d 1328, 1331 (N.Y. 1979). Indeed, "[c]onsiderations of due

process prohibit personally binding a party by the results of an action in which that party has never been afforded an opportunity to be heard." *Id.* at 1331-32. But in certain cases, where (1) there is an "issue which has necessarily been decided in [a] prior action and is decisive to the present action, and" (2) the party against whom the collateral estoppel will apply had "a full and fair opportunity to contest the decision now said to be controlling." *Buechel v. Bain*, 766 N.E.2d 914, 919 (N.Y. 2001). The second requirement is decisive here.

Under the second requirement, "the party sought to be collaterally estopped in the current action need not have been the one for or against whom judgment was rendered in the previous action." *Gramatan*, 386 N.E.2d at 1332. Rather, New York law "permits utilization of collateral estoppel . . . against persons who were not parties to the previous action but who were connected with" an existing party through privity—"a mutually successive relationship of the same rights to the same property." *Id.* But the State's law also imposes an important limitation on privity: "In the assignor-assignee relationship, privity must have arisen after the event out of which the estoppel arises." *Id.* In other words, "an assignee is deemed to be in privity with the assignor where the action against the assignor is commenced before there has been an assignment." *Id.* Only in such cases can the assignee be "charged with notice that his rights to the assignment are subject to competing claim." *Id.*

Here, Green and Defendants entered the Green-Franklin Assignment in June 2021 and the New York litigation did not begin until March 2024. (Doc. 13 at 5-6). Defendants cannot be considered in privity with Green because the Green-Franklin Assignment "was made well before commencement of the" action against Green. *Gramatan*, 386 N.E.2d at 1332. Thus, Defendants are not "bound by the terms of" the Consent Order and cannot be collaterally estopped by Plaintiff. *Id.* Plaintiff's claim—which asks the Court to declare that "all the rights and interests conveyed to Franklin Group by Green Capital via the Assignment are void and unenforceable" because of the Consent Order (Doc. 13 at 9-10)— therefore fails as a matter of law. Plaintiff may not rely on the terms of the Consent Order

as grounds to invalidate or render unenforceable Defendants' rights and interests.

Accordingly, Defendants' Motion for Judgment on the Pleadings is granted. And to the extent that Plaintiff's proposed Second Amended Complaint continues to rely—even implicitly—on the Consent Order as legally binding on Defendants' rights and interests, Plaintiff's Motion to Amend is denied.

But Plaintiff's Motion to Amend is not denied in its entirety. The proposed Second Amended Complaint also alleges that Defendants' senior security interest is no longer enforceable because the underlying debts were satisfied in full. (Doc. 31at 2, 5 (describing Doc. 31-1)). Though Defendants argue that Plaintiff has already previously amended its complaint, and that further amendment would cause prejudice and undue delay, reflecting bad faith by Plaintiff, Defendants do not argue that such amendments would be futile. (Doc. 32 at 3-5). Nor is the Court convinced that Plaintiff's Motion to Amend was made in bad faith, or that granting the motion would cause undue delay or any harm to Defendants. Plaintiff's proposed amendment alleges a new legal theory but bases that theory on the same series of transactions at issue in the First Amended Complaint. Further, Plaintiff made this motion within a few months of filing its initial Complaint (Doc. 1) and has only amended its complaint once (Doc. 13) as a matter of course. Fed. R. Civ. P. 15(a)(1). As such, applying the Ninth Circuit's standards favoring amendment, the Court grants Plaintiff's Motion to Amend to the extent that the proposed Second Amended Complaint alleges that Defendants' senior security interest is no longer enforceable because the underlying debts were satisfied in full. (Doc. 31 at 2, 5 (describing Doc. 31-1)).

Defendant's Motion for Judgment on the Pleadings is thus granted with leave to amend. Plaintiff may file an amended complaint consistent with this Order.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendants' Motion for Judgment on the Pleadings (Doc. 28) is **GRANTED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend (Doc. 31) is **DENIED** in part and **GRANTED** in part**.**

- 7 -

**IT IS FURTHER ORDERED** that Plaintiff shall have fourteen (14) days from the date of this Order to file an amended complaint.  If an amended complaint is not timely filed, the Clerk of Court is directed to enter judgment in favor of Defendants consistent with this order and to terminate this action.

Dated this 31st day of March, 2026.

_G. Murray Snow_
G. Murray Snow
Senior United States District Judge